UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DENNIS JONES, | ) | CIV. 13-4055-KES |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| REGENT INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

    Plaintiff, Dennis Jones, brought this suit against defendant, Regent Insurance Company, to recover for injuries sustained while he tried to assist an uninsured motorist. Regent moves for summary judgment.[1] Jones resists the motion. The motion is denied.

## BACKGROUND

    The facts, viewed in the light most favorable to Jones, the nonmoving party, are as follows:

    At all relevant times, Jones was employed by Vern Eide, a local car dealership, where he began working in 2004. As part of his job, Jones regularly drove Vern Eide's courtesy shuttle to deliver parts and pick up and drop off customers. Vern Eide

---

[1] Regent also requests oral argument pursuant to D.S.D. Civ. LR 7.1. Docket 8 at 1. Because the court can resolve the pending motion for summary judgment without oral argument, Regent's request is denied.

purchased uninsured and underinsured motorist coverage for its courtesy shuttle through Regent.

On July 6, 2011, Jones was making a work delivery when his wife asked him to pick up a prescription at the Avera McKennan campus. Jones decided to pick up her prescription on his way back to Vern Eide's Acura dealership. When Jones neared Avera, he encountered a couple, Michelle and Jeffrey Bigelow, pushing a stranded vehicle in the street. The Bigelows did not ask Jones for help, but Jones stopped to offer assistance both because he wanted to help and because his supervisors had instructed him to assist any stranded motorist he came across.

Jones parked the courtesy shuttle behind the disabled vehicle, turned on his flashers, and exited the courtesy shuttle, leaving its engine running. Jeffrey informed Jones that the disabled car was experiencing transmission problems and Jones observed a trail of fluid leaking from the car. With Michelle pushing from the driver's side door and steering, and Jeffrey and Jones pushing from the rear of the vehicle, the three managed to move the vehicle and turn it into the entrance of a nearby parking lot.[2]

---

[2] There is a disagreement over how far the Bigelow vehicle was moved from the courtesy shuttle. Jones testified that they pushed the disabled vehicle twenty to thirty feet before turning into the parking lot, although it is unclear from the record whether this reference is to the distance from the courtesy vehicle to the parking lot, or refers to the distance from the entrance of the parking lot to where Jones fell. *See* Docket 10-1 at 30. Jones also stated that Michelle fell at or very near to the entrance to the parking lot. *Id.* at 18. Finally, Jones recalled that he fell about thirty feet from

Once the vehicle reached the parking lot, Michelle began to turn the car right again to maneuver it into a vacant parking spot. At this time, the car began to roll downhill. During this second turn, Michelle attempted to get inside the vehicle and became stuck in the driver's side door, fell down, and was dragged by the vehicle as it continued to roll. As Jeffrey tended to the injured Michelle, Jones ran after the vehicle as it continued to roll downhill and pick up speed.[3] Reaching through the open driver's window, Jones attempted to shift the car into park, but it did not stop. During a second attempt to put the vehicle in park, Jones somehow fell or was knocked to the ground and suffered injuries including a broken jaw, a fractured ear drum, nerve damage, and lost teeth. The Bigelows's vehicle continued to roll until it struck another vehicle in the parking lot.

Following this accident, Jones filed a claim with his automobile insurer. Subsequently, Jones filed another claim with Regent under Vern Eide's insurance policy. Regent denied the claim, and Jones filed this suit, seeking damages pursuant to

---

where Michelle fell. *Id.* At his deposition, Jones placed markings on a map of the accident scene, which depicts greater distances between the courtesy shuttle, the parking lot, and where Jones fell. *Id.* at 34. It is also unclear whether Jones marked the map with knowledge of its scale. For purposes of summary judgment, the court accepts the facts most favorable to Jones, and draws the inference that Jones fell roughly sixty feet from the courtesy shuttle.

[3] Jones testified that when the vehicle first began to roll, it was moving at two to five miles per hour. Docket 10-1 at 20. Jones also stated that by the time he fell, he estimated the vehicle was moving at five to eight miles per hour. *Id.* at 28.

the uninsured motorists provision in the policy. The uninsured motorists provision in Vern Eide's policy reads as follows:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

Docket 10-4 at 4. When an organization is the named insured party, the policy defines an "insured" as "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." *Id.* The policy defines "occupying" as "in, upon, getting in, on, out or off." Docket 15-2 at 3.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant is required to present admissible evidence showing there is no dispute of material fact or must show that the nonmoving party has not presented admissible evidence to support an element of the case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). If the movant meets its burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*,

415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment should not be granted if there is a material factual dispute that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

" 'It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.' " *In re Baycol Prod. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010) (quoting *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996)). Both parties agree that South Dakota substantive law governs the claims and defenses in this case, and both parties rely on South Dakota law in their written submissions.

## DISCUSSION

**I.     Right to Recovery**

South Dakota law states in pertinent part that:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death . . . may be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are *legally entitled to recover damages from owners or operators of uninsured motor vehicles* and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

SDCL 58-11-9 (emphasis added). Vern Eide's policy through Regent mirrors this language, promising that Regent "will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured or underinsured motor vehicle." Docket 10-4 at 4 (internal quotations omitted).

The parties do not dispute that the Bigelows were uninsured motorists at the time of the accident or that Jones's bodily injuries resulted from the accident, but they do dispute whether Jones is legally entitled to recover against the Bigelows. Jones asserts that the Bigelows "negligently operated the vehicle and the steering mechanism," thereby causing his injuries and entitling him to a recovery. Docket 12-1 at 3; *see also* Docket 12 at 9-11. Regent argues that Jones cannot establish that the Bigelows were negligent. Regent further argues that Jones's recovery would be barred by either Jones's contributory negligence or his assumption of the risk. Docket 9 at 2.

An insured does not need to reduce a claim against an uninsured motorist to judgment in a prior proceeding to establish a legal right to recover damages. *Helmbolt v. LeMars Mut. Ins. Co.*, 404 N.W.2d 55, 59 (S.D. 1987). In *Baker v. Continental Western Ins. Co.*, 748 F. Supp. 716 (D.S.D. 1990), the court found that "the words 'legally entitled to recover' mean simply that an insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages, and to prove the extent of those damages." *Id.* at 722; *accord Winner v. Ratzlaff*, 505 P.2d 606, 611 (Kan. 1973).

6

"Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Janis v. Nash Finch Co.*, 780 N.W.2d 497, 500 (S.D. 2010). Accordingly, to establish negligence under South Dakota law, a plaintiff is required to show a duty on the part of the defendant, a failure to perform that duty, and an injury to the plaintiff resulting from such failure. *See Erickson v. Lavielle*, 368 N.W.2d 624, 626 (S.D. 1985). Except in rare circumstances, negligence is a question of fact for the jury. *See Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D. 1983).

In this case, Jones alleges that the Bigelows negligently operated the vehicle and the steering mechanism. Docket 12-1 at 3. Jones testified that Michelle Bigelow, while pushing the disabled car and turning it downhill, was responsible for both steering and stopping the vehicle. Docket 10-1 at 19-20. He stated that, while trying to jump into the car to steer it into the parking spot and put her foot on the brake, Michelle fell down. *Id.* at 19-20. When she fell, the car began to roll, uncontrolled, downhill.

From these facts, it would be possible for a jury to find that Michelle Bigelow breached a duty to operate the disabled vehicle in a safe manner. A jury could also find that it was reasonably foreseeable that an onlooker such as Jones could be injured. On the whole, Jones has pointed to specific facts in the record from which a jury could find that the Bigelows were at fault for his injuries. Based on the facts presented by Jones, this is not one of the rare cases in which the question of negligence should be taken away from a jury.

Regent also asserts that Jones is not entitled to a recovery against the Bigelows because any recovery based on negligence by the Bigelows would be barred by either Jones's contributory negligence or assumption of the risk. The majority of courts have held that an insurance company such as Regent, as the uninsured motorist liability carrier, can present the substantive defenses the uninsured motorist could have raised. *See, e.g., Jenkins v. City of Elkins*, 738 S.E.2d 1, 12 (W. Va. 2012) (collecting cases); *see also Runge v. Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538, 539-40 (S.D. 1986) (examining whether an insurance company established the affirmative defense of contributory negligence in an uninsured motorist case). " 'Ordinarily, questions of negligence, contributory negligence and assumption of risk are for the jury, provided there is evidence to support them.' " *Goepfert v. Filler*, 563 N.W.2d 140, 142 (S.D. 1997) (quoting *Mack v. Kranz Farms, Inc.*, 548 N.W.2d 812, 814 (1996)). Regent bears the burden of proof on its affirmative defenses. *Clarkson & Co. v. Continental Resources, Inc.*, 806 N.W.2d 615, 619 (S.D. 2011) (stating that the defendant has the burden to prove each element of an affirmative defense); *Johnson v. Armfield*, 672 N.W.2d 478, 481-82 (S.D. 2003) (finding that the defendant had failed to introduce sufficient evidence to support his claim of contributory negligence).

Under South Dakota law, a plaintiff whose contributory negligence is slight in comparison to the negligence of the defendant may still recover damages, reduced by the fault of the plaintiff. SDCL 20-9-2. Regent introduces Jones's testimony that the

Bigelows did not physically cause him to fall and that Jones did not think the accident was their fault. Docket 9 at 10. Based on Jones's deposition, Regent argues that Jones's negligence must be greater than that of the Bigelows because the Bigelows were not negligent. *Id.*

Regent has introduced minimal evidence that tends to show Jones was negligent. Assuming that Regent could establish that Jones was negligent, a comparison of Jones's negligence to the negligence of the Bigelows would be a question for the jury. *See Robinson v. Mudlin*, 273 N.W.2d 753, 756 (S.D. 1979). Because it would be possible for a jury to find that Jones was not negligent or that Jones's contributory negligence was slight when compared to the negligence of the Bigelows, contributory negligence does not bar Jones's recovery as a matter of law.

Assumption of risk, though similar to contributory negligence, is legally distinct. *See, e.g., Bartlett v. Gregg*, 92 N.W.2d 654, 658 (S.D. 1958) (contrasting contributory negligence and assumption of risk). To demonstrate that Jones assumed the risk of injury in this situation, Regent would have to show that Jones had actual or constructive knowledge of the risk, that he appreciated its character, and that he voluntarily accepted the risk with the time, knowledge, and experience to make an intelligent choice. *Goepfert*, 563 N.W.2d at 142 (citing *Bauman v. Auch*, 539 N.W.2d 320, 326 (S.D. 1995)). Regent introduced testimony that Jones has pushed cars before, and

9

it argues that pushing disabled vehicles is a plainly observable risk which no adult person of average intelligence could deny and that Jones voluntarily accepted that risk.

The evidence introduced by Regent, that Jones has pushed disabled vehicles before, does not conclusively establish that Jones assumed the risk of his injuries. *See Goepfert*, 563 N.W.2d at 142 ("It is only where the essential elements are conclusively established that the plaintiff may be charged with assumption of the risk as a matter of law."). Additionally, the South Dakota Supreme Court stated that "[a]ssumption of risk necessarily connotes attention to reasonable alternatives." *Id.* at 144. Regent argues that Jones could simply have walked away from the moving vehicle, but it does not show that, in such an emergency situation, Jones had the time necessary to assess the risks and make an intelligent choice before abandoning or chasing after the rolling vehicle after it began rolling down the hill. Regent also argues that Michelle's injury should have made Jones aware that he could also be injured. But Jones did not try to enter the moving vehicle, as Michelle had done, and he was not injured in the same way. Furthermore, Regent would still have to conclusively establish that, following Michelle's injury, Jones had time to make an intelligent decision to accept the risk of injury. Overall, Regent has failed to establish that, as a matter of law, Jones assumed the risk of his injuries. Accordingly, the court cannot determine as a matter of law that assumption of the risk bars Jones from recovering against the Bigelows.

Jones has introduced evidence that creates a factual question as to whether he is entitled to damages from the Bigelows for their alleged negligence. Questions of fact remain with respect to the affirmative defenses of contributory negligence and assumption of risk. Whether Jones is legally entitled to recover under the facts presented here is a determination properly left to a jury.

## II.     Policy Coverage

The parties do not dispute that Vern Eide's courtesy shuttle is the only vehicle involved that was covered under Vern Eide's policy through Regent. Consequently, for Vern Eide's policy to provide coverage for Jones, Jones must have been "occupying" the courtesy shuttle.[4] *See* Docket 10-4 at 4 (including employees "occupying" an insured vehicle as an "insured" under the terms of the policy).

---

[4] Jones separately contends that limiting coverage to instances where the injured party is "occupying" the insured vehicle is not consistent with or authorized by South Dakota law, and consequently is void as against public policy. Docket 12 at 8-9. The authority Jones cites for this proposition is not on point. Additionally, the court agrees with Regent that the South Dakota Supreme Court's decisions interpreting the term "occupying" suggest that the use of that term in insurance policies, while ambiguous, is not contrary to public policy. *See Roden v. Gen. Cas. Co. of Wis.*, 671 N.W.2d 622, 625-26 ("This language is fairly standard in the insurance industry."); *see also Gloe v. Iowa Mut. Ins. Co.*, 694 N.W.2d 238, 242 (S.D. 2005) (upholding an exclusion in coverage when the injured parties "were not residents of [the insured's] household and were not occupants of a covered auto"). Justice Zinter's concurrence in *Roden* further suggests that insurers could incorporate a provision or definition which excludes *Roden's* expansive definition of occupancy. *See Roden*, 671 N.W.2d at 630 (Zinter, J., concurring).

"State law governs the interpretation of insurance policies." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003). Under South Dakota law, contract construction is a question of law determined by the court. *Roseth v. Roseth*, 829 N.W.2d 136, 142 (S.D. 2013). When insurance policy provisions are ambiguous, the court should adopt the interpretation most favorable to the insured. *Alverson v. Northwestern Nat'l Cas. Co.*, 559 N.W.2d 234, 235 (S.D. 1997).

The South Dakota Supreme Court has considered a definition of "occupying" almost identical to the definition at issue in this case and determined the definition was "ambiguous and subject to differing interpretations." *Roden v. Gen. Cas. Co. of Wis.*, 671 N.W.2d 622, 626 (S.D. 2003).[5] Consequently, the court must engage in a "factually intensive" analysis to determine whether Jones was occupying the courtesy shuttle at the time of the accident. *Id.* This analysis involves "determin[ing] whether or not [Jones] was engaged in a transaction that was vehicle orientated and related to occupying the vehicle." *Id.* at 628.

Under *Roden*, the court should consider four factors to determine if an injured person was occupying a vehicle: (1) whether there was a causal relation or connection between the injury and the use of the insured vehicle; (2) whether the person asserting coverage was in reasonably close geographic proximity to the insured vehicle;

---

[5] The language that the South Dakota Supreme Court found to be ambiguous in *Roden* defined "occupying" as "in, on, upon, getting in, on, out, or off." *Roden*, 671 N.W.2d at 625.

(3) whether the person was vehicle oriented rather than highway or sidewalk oriented at the time of the accident; and (4) whether the person was engaged in a transaction essential to the use of the vehicle at the time of the accident. *Id.* at 628-29.

In *Roden*, the South Dakota Supreme Court examined a number of other fact patterns for guidance in applying the four-factor test. In *Utica Mut. Ins. Co. v. Contrisciane*, 473 A.2d 1005 (Pa. 1984), a driver was in an accident and was instructed by police at the scene to bring his insurance information from his insured vehicle to a police car. The driver complied and was standing next to the police car, and 97 feet from the insured vehicle, when he was killed by another driver. The Pennsylvania Supreme Court found that a connection existed because the injured party's presence at the location of the accident was directly related to the continued legal operation of his insured vehicle and "the use of the [insured] vehicle . . . precipitated the whole unfortunate series of events." *Id.* at 1009.

In *Simpson v. United States Fidelity & Guaranty Co.*, 562 N.W.2d 627 (Iowa 1997), a city employee was struck by an uninsured motorist while he was returning to his truck to get tools needed to continue working on a nearby water valve. Although the employee was some distance from the insured vehicle when he was hit, the Iowa Supreme Court found that "[h]e was clearly engaged in an activity relating to the use of the specialized truck. The vehicle was not merely a means of transporting persons, but

was designed and equipped to aid with water valve inspection, cleanup, and repair." *Id.* at 630-31.

In *Gorham v. Guidant Mutual Insurance Co.*, 80 F. Supp. 2d 540 (D. Md. 2000), a woman was injured by an underinsured motorist as she was retrieving her eyeglasses from the trunk of a vehicle in a caravan with the insured vehicle, which was pulled over on the side of the road. The district court held that she was occupying the insured vehicle because the reason she was in the road—to retrieve her glasses so she could safely drive the insured vehicle—was tied to the continued safe operation of the insured vehicle. *Id.* at 547-48.

In *Downing v. Harleysville Insurance Co.*, 602 A.2d 871 (Pa. Super. Ct. 1992), the injured party was a passenger in the insured vehicle and exited the insured vehicle to assist a vehicle disabled with a flat tire. While changing the tire, the injured party was struck by an uninsured motorist. The Pennsylvania Superior Court found that the injuries were not causally connected to the use of the insured vehicle, that the injured party was not oriented to the insured vehicle as he became highway-oriented when he left the insured vehicle to assist the disabled vehicle, and that the injured party "was not engaging in a transaction essential to the use of the [insured] vehicle at the time of the accident." *Id.* at 874-75.

In *Roden*, the injured party was leaning on an insured vehicle while discussing company business with his supervisor, who was in the insured vehicle, when he was

injured. The South Dakota Supreme Court found that the injured party was occupying the insured vehicle because it was a mobile office and the injured party was conducting business at the time of the accident. *Roden*, 671 N.W.2d at 628-29. Following *Roden*, this court confronted a fact pattern in which an injured party was struck while repairing another vehicle that the insured vehicle was assigned to follow. The court found a connection between the injured party and the insured vehicle because the insured vehicle, with flashers on, served as a warning device while the injured party worked on the disabled vehicle, and the purpose of the injured party's use of the insured vehicle depended on continuing its journey with the disabled vehicle. *See Mehlbrech v. Acuity*, Civ. No. 11-4102-KES, 2012 WL 4718659 (D.S.D. Oct. 3, 2012).

Turning to the facts of this case, the first factor requires a causal connection between Jones's injury and his use of the courtesy shuttle. Jones argues that he was using the courtesy shuttle for travel, that he was moving the disabled vehicle so he could continue to travel in the courtesy shuttle, and that he was complying with his employer's policy requiring him to assist stranded motorists when driving the courtesy shuttle. Docket 12 at 7. Regent contends that Jones was on a personal errand and was under no obligation to stop, and that he was not connected to the courtesy shuttle because he was helping a different disabled vehicle, similar to *Downing*. Docket 9 at 15-17.

Jones's testimony is clear that, even though he was on a personal errand when he encountered the Bigelows, his employers had instructed him on numerous occasions that his job required him to render assistance to stranded motorists to build Vern Eide's brand and generate business. *See* Docket 10-1 at 11-12. The fact that Jones was driving the courtesy shuttle is directly connected to the series of events that culminated in his injury. Furthermore, Jones parked the courtesy shuttle behind the disabled vehicle and turned on his emergency flashers. As in *Melbrech*, Jones was using the courtesy shuttle as a warning device to alert other drivers on the road to the presence of the disabled vehicle.

Regent urges the court to follow *Downing*. But *Downing* is distinguishable from the facts here because in *Downing*, the injured party rendered assistance that was not connected to the use of the insured vehicle. In this case, Jones's offer of assistance was directly related to his use of the insured vehicle because it was required by his job as the courtesy shuttle driver. Jones's use of the courtesy vehicle is premised upon his acceptable performance of the duties assigned to him by Vern Eide, which included stopping to assist stranded motorists. Furthermore, the use of the courtesy shuttle as a warning device ties the courtesy shuttle to the subsequent act of pushing the disabled vehicle to safety in a nearby parking lot.

The courtesy shuttle played a central role in the events leading up to Jones's injury. Jones was performing his job, as required by his employer, as a courtesy shuttle

driver. The courtesy shuttle itself was used as a warning device to aid Jones and the Bigelows as they pushed the disabled vehicle. Thus, there is a causal connection between the courtesy shuttle and Jones's injury.

The second factor requires Jones to have been in reasonably close proximity to the courtesy shuttle when he was injured. This factor is flexible. *See Simpson*, 562 N.W.2d at 631 (collecting cases in which an injured party was deemed to be "occupying" an insured vehicle despite being varying distances away from it at the time of injury); *Contrisciane*, 473 A.2d at 1007-1009 (holding that the injured party was "occupying" the insured vehicle when he was 97 feet away from it at the time of the accident). Regent asserts that Jones fell "hundreds of feet" from the courtesy shuttle. Docket 9 at 17. The exact distance between the parked courtesy shuttle and the spot where Jones fell is unclear, but Jones's testimony suggests that the car had not moved a great distance from the courtesy shuttle. From the map of the accident scene, as the disabled vehicle rolled east through the parking lot, it actually would have been narrowing the linear gap to the courtesy shuttle. *See* Docket 10-1 at 34 (showing the approximate path of the disabled vehicle). Because Jones was likely less than 100 feet and could have been as close as fifty to sixty feet away from the courtesy vehicle, and his job required him to assist the disabled vehicle, the court finds he was in reasonably close proximity to the courtesy shuttle when he was injured.

The third factor concerns whether Jones was vehicle oriented rather than highway oriented at the time of the accident. The injured party need not be literally facing the insured vehicle, but "the nature of the act engaged in at the time of the injury and the intent of the person injured" must suggest some purposeful connection to the use of the insured vehicle. *See Gorham*, 80 F. Supp. 2d at 548 & n.6. In *Contrisciane*, the injured party was next to and facing a police car 97 feet away from the insured vehicle, but he was deemed to be vehicle oriented because his presence away from the insured vehicle was tied to his continued legal operation of the insured vehicle and he anticipated returning to the insured vehicle. *Contrisciane*, 473 A.2d at 1009.

Jones was out of the courtesy shuttle performing his job as instructed by his employer. His access to and use of the courtesy shuttle was premised on his performance of the duties assigned to him by Vern Eide. Jones left the engine of the courtesy shuttle running, suggesting he anticipated returning to the vehicle as soon as his job was complete. *See* Docket 10-1 at 9-10. Jones's presence away from the courtesy shuttle cannot be separated from his purpose in using the courtesy shuttle, unlike the injured party in *Downing*, whose presence at the disabled vehicle was not tied in any way to the insured vehicle. The court finds that Jones was sufficiently vehicle oriented at the time of his injury.

The fourth factor requires that Jones must have been engaged in a transaction essential to the use of the courtesy shuttle. Unlike the injured party in *Downing*, Jones was engaged in a transaction essential to his use of the courtesy shuttle because it was one of the express duties of the courtesy shuttle operator. Additionally, the courtesy shuttle assisted Jones in moving the disabled vehicle because its flashers served as a warning device to other vehicles. The facts here demonstrate that at the time of his injury, Jones was engaged in a transaction that was essential to his use of the courtesy shuttle.

Based on the application of *Roden's* four-factor test, the court finds that under South Dakota law Jones was occupying the courtesy shuttle at the time of his injury. This finding is consistent with the South Dakota Supreme Court's instruction to resolve ambiguity in an insurance contract in the manner most favorable to the insured. *See Alverson*, 559 N.W.2d at 235. Additionally, this finding is harmonious with the remedial purpose of the uninsured and underinsured motorist statutes. *See Baker*, 748 F. Supp. at 718.

### III. Medical Payments Coverage

In his response brief, Jones asserts a claim for medical payments coverage under Vern Eide's policy. Docket 12 at 11. The court is without the benefit of full briefing by the parties on this subject. Because the court does not need to resolve the issue of medical payment benefits to rule on Regent's motion for summary judgment, the court

does not reach the issue of whether Jones is entitled to medical payment benefits under Regent's policy.

## CONCLUSION

Under South Dakota law, Jones was occupying the courtesy shuttle when he was injured. Additionally, Jones has introduced sufficient evidence to create a genuine factual question as to whether he is legally entitled to recover damages against the Bigelows for negligence. Accordingly, it is

ORDERED that Regent's motion for summary judgment (Docket 8) is denied.

Dated June 2, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE